**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **PUNITA K. AND GANESH PONNADURAI,** | § | |
| | § | |
| ***Plaintiffs*,** | § | |
| | § | **CIVIL ACTION NO. 4:23-CV-01545** |
| **V.** | § | **JURY** |
| | § | |
| **LIBERTY INSURANCE CORPORATION,** | § | |
| | § | |
| ***Defendant*.** | § | |

**DEFENDANT LIBERTY INSURANCE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Liberty Insurance Corporation ("Liberty" or "Defendant") files its *Motion for Summary Judgment* (the "Motion") and asks the Court to grant summary judgment in favor of Defendant Liberty Insurance Corporation. Defendant respectfully shows the Court as follows:

## FACTS AND BACKGROUND

1. This case arises of alleged property damage during Winter Storm Uri in February of 2021. Plaintiffs had a homeowners policy with Defendant and filed a claim on February 16, 2021. Plaintiffs claimed their property suffered interior damage as a result of frozen pipes. Defendant contacted Plaintiffs shortly after they filed their claim and inspected the property on February 26, 2021. Defendants then concluded the adjustment via letter dated March 9, 2021. *See* **Exhibit A-2**, attached hereto. On the same day, Defendant issued payment in the amount of $8,565.40 after applying the deductible and accounting for depreciation. *Id*.

2. Following the initial payment Liberty continue to accept additional information provided to it by Plaintiffs. Following review of documentation Liberty made supplemental payments to

Plaintiffs for damages to covered property and additional living expenses. Liberty issued the following supplemental payments:

**Total Dwelling Payments to Plaintiffs: $159,112.99**

- March 8, 2021 in the amount of $468.96 to Paul Davis Restoration;
- March 9, 2021 in the amount of $4,045.06 after applying depreciation and the deductible;
- April 13, 2021 in the amount of $16,236.23;
- May 21, 2021, in the amount of $24,662.78 to Paul Davis Restoration;
- May 28, 2021 in the amount of $1,283.25;
- July 15, 2021 in the amount of $65,881.53March 4, 2022 in the amount of $35,000;
- June 3, 2022 in the amount of $11,752.86.

**Personal Property Payments to Plaintiffs: $27,651.17**

- October 2, 2021 $2,342.57;
- October 16, 2021 $18,143.98 to Paul Davis Restoration;
- October 19, 2021 in the amount of $555.54;
- January 6, 2022 in the amount $1,818.73 to Paul Davis Restoration;
- February 10, 2022 in the amount of $4,790.35 to Paul Davis Restoration.

**Additional Living Expenses to Plaintiffs: $87,261**

- March 9, 2021 in the amount of $4,520.34;
- April 13, 2021 in the amount of $3,699.23;
- May 28, 2021 in the amount of $11,241.48;
- June 16, 2021 in the amount of $5,084 to ALE Solutions Inc.;

- June 18, 2021 in the amount of $11,178 to ALE Solutions Inc.;
- June 25, 2021 in the amount of $7,064.58;
- July 2, 2021 in the amount of $5,683.13;
- July 21, 2021 in the amount of $5,084 to ALE Solutions Inc.;
- August 3, 2021 in the amount of $5,872.56;
- August 18, 2021 in the amount of $4,920;
- September 3, 2021 in the amount of $5,872.56;
- September 17, in the amount of $5,084 to ALE Solutions;
- October 11, 2021 in the amount of $5,683.13;
- December 4, 2021 in the amount of $5,070 to ALE Solutions;
- December 22, 2021 in the amount of $1,203.99.

*See* **Exhibit A-3**.

3. Despite, all of Liberty's payments including paying over the policy limit Plaintiffs' additional living expenses, Plaintiffs retained counsel, who sent a letter of representation on September 15, 2022. *See* **Exhibit A-1** at pg. 3; Coverage D limit of $87,000. Plaintiffs' then sent a demand to Liberty on January 16, 2023 demanding $233,346.54. Plaintiffs ultimately sued on March 27, 2023, over two (2) years and eighteen (18) days after Liberty made its coverage determination accepting the claim.

**<u>SUMMARY JUDGMENT EVIDENCE</u>**

4. In support of this motion, Liberty attaches the following summary judgment evidence filed herewith and incorporated by reference:

<u>Exhibit A</u>: Declaration of Kolby J. Keller

Exhibit A-1: Certified Copy of the Policy

Exhibit A-2: March 9, 2021 Coverage Letter

Exhibit A-3: Payment Log Showing Checks Cleared

**STANDARD OF REVIEW**

5. A court shall grant summary judgment if the moving party demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Courts "draw all reasonable inferences in favor of the nonmoving party. However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal citations omitted). Thus, to defeat summary judgment, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986). Relevant to this proceeding, the interpretation and construction of insurance policies are a matter of law and, therefore, are particularly amenable to summary judgment. *Reliance Ins. Co. v. Shenandoah S., Inc.*, 81 F.3d 789, 791 (8th Cir. 1996); *Snyder General Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 677 (N.D. Tex. 1996).

6. Texas law governs diversity cases. *Willoughby v. Metro. Lloyds Ins. Co. of Tex.*, 548 Fed. Appx. 121, 123 (5th Cir. 2013). "Under Texas law, an insured bears the burden of proving that a loss is covered under the terms of an insurance policy." *Becerra v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:19-CV-2571, 2021 WL 1135031, at *1 (S.D. Tex. Feb. 3, 2021, Bennett, J.) (quoting *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004).

## ARGUMENTS AND AUTHORITIES

### I. THE LIMITATION PERIOD TO BRING SUIT IS TWO YEARS FROM THE DATE DEFENDANT ACCEPTED OR REJECTED THE CLAIM: MEANING LIMITATIONS EXPIRED ON MARCH 9, 2023.

7. The limitation period for bringing a cause of action is defined within the Policy as within two years from the date Defendant accepts or rejects the claim.

> **G. Suit Against Us**
> **No suit or action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy. Action brought against us must be started from the earlier of two years from the date we accept or reject the claim or three years from the date of the loss that is subject to the claim.**[1]

Parties can agree to a different limitations period as part of the underlying contract. The limitations period must be at least two years. A cause of action accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy.

8. Generally, the statute of limitations for a breach of contract claim is four years from the date the cause of action accrues. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2015). However, the parties may contractually agree to shorten the limitations period for a breach of contract claim so long as the agreement does not limit the time in which to bring suit to a period shorter than two years. Id. § 16.070(a). A contractual limitations provision shorter than two years is void in Texas. *See id.*

9. For purposes of application of the statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). Put another way, "a cause of action can generally be said to accrue when the wrongful act effects an injury." *Id*. Further, a

---

[1] *See* **Exhibit A-1**, Policy Special Provisions – Texas FMHO 6100TX 10 19 Pg. 10 of 15.

breach of an insurance contract action accrues when the claimant has notice of facts sufficient to place the claimant on notice of the breach. *See Jett v. Truck Ins. Exch.*, 952 S.W.2d 108, 111 (Tex. App.—Texarkana 1997, no writ). A notice in that claim determination need not include any magic words if the insurer's determination regarding a claim and its reasons for its decision are contained in a clear writing to the insured. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003). In Texas, where an insurance provider denies coverage, the limitations period starts to run at the time of denial. *See id*. The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run. *See Knott*, 128 S.W.3d at 221.

10. Contractual limitations periods for a breach of contract actions of two years from day from the date the claim accrues, complying with Section 16.070, have been uniformly upheld as valid and enforceable. *See, e.g., Pace v. Travelers Lloyds of Tex. Ins. Co.,* 162 S.W.3d 632, 634-35 (Tex. App. - Houston [14th Dist.] 2005, no pet.) (holding that limitations began to run on denial of coverage).

### A. DEFENDANT'S MARCH 9, 2021 LETTER CLEARLY COMMUNICATES DEFENDANT'S COVERAGE DETERMINATION

11. In the context of Texas Insurance law, a cause of action for insurance proceeds generally accrues when the insurance company provides the insured its claim determination.[2] A notice in that claim determination need not include any "magic words" if the insurer's determination regarding a claim and its reasons for its decision are contained in a clear writing. *Knott*, 128 S.W.3d at 222; *Ocotillo Real Estate Investments I, LLC v. Lexington Insurance Company,* No. 3:14-CV-

[2] *See Citigroup Inc. v. Federal Insurance Company,* 649 F.3d 367,373 (5th Cir. 2011) (citing to *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828-29 (Tex. 1990)); *Provident Life and Accident Insurance Company v. Knott,* 128 S.W.3d 211, 221 (Tex. 2003); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 969 S.W.2d 507 (Tex. 1998); *Webster v. Allstate Ins. Co.,* 833 S.W.2d 747 (Tex. App. - Houston [1st Dist.] 1992, no writ); *Alvarez v. American Gen. Fire & Cas. Co.,* 757 S.W.2d 156, 158 (Tex. App. - Corpus Christi 1988, no writ); *Reames v. Logue,* 712 S.W.2d 802, 804 (Tex. App. - Dallas 1986, writ ref'd n.r.e.).

3259-N, 2015 WL 11120866 at *2 (N.D. Tex. Jan. 09, 2015) (insurer's letter communicated an unequivocal decision to deny coverage). The injury producing event is the denial of coverage - here, the acceptance and payment of the claim in the amount Defendant determined. *Murray* at 829; *Davis v. Aetna Casualty & Surety Company,* 843 S.W.2d 777, 778 (Tex. App. - Texarkana 1992, no writ).

12. In the first-party insurance context, a cause of action generally accrues when the insurer denies a claim. *Knott*, 128 S.W.3d at 221. For limitations purposes, the denial of coverage occurs on the date of the written notice of denial or the date the claim file is closed. *De Jongh v. State Farm Lloyds*, 664 F. App'x 405, 409 (5th Cir. 2016) (following "the weight of authority in Texas holding that closing a claim file constitutes an outright denial of coverage and triggers the limitations period."). An insured's cause of action against his insurer accrues upon closure of the claim file even if the insurer later reopens the claim file and considers an additional request for payment. *Id*.; *Smith v. Travelers Cas. Ins. Co. of Am*., No. CV H-16-1527, 2018 WL 3369683, at *4 (S.D. Tex. July 10, 2018) (closure of a claim file indicates an outright denial which starts the limitations period even if the insurance company later reopens the claim file to consider additional evidence). *Goldberg v. Chubb Lloyd's Ins. Co. of Texas*, No. 4:21CV3112, 2022 WL 2707759, at *3 (S.D. Tex. June 27, 2022), report and recommendation adopted, No. 4:21-CV-3112, 2022 WL 2704846 (S.D. Tex. July 12, 2022), appeal dismissed, No. 22-20417, 2022 WL 18635744 (5th Cir. Nov. 1, 2022). Once an insured receives the claim determination of what an insurer determined to be the proper indemnity owed, those facts came "into existence," accrual happened, and the limitations period began. *See Murray,* 800 S.W.2d at 828.

13. Courts have consistently held that when the insurer leaves no ambiguity concerning the finality of its determination with respect to the insured's claim, the accrual date of insured's cause

of action is not postponed. *See Lozada v. Farrall & Blackwell Agency, Inc.,* 323 S.W.3d 278, 289 (Tex. App. - El Paso 2010, no pet.); *Davis v. Aetna Cas. & Sur. Co.,* 843 S.W.2d 777,778 (Tex. App. - Texarkana 1992, no writ); *Cigna Ins. Co. v. Simmons,* 35 F.3d 561 (5th Cir.1994); *Painter Family Investments, LTD., L.L.P. v. Underwriters at Lloyds, Syndicate 4242 Subscribing to Policy No. 42-7560009948-L-00,* 836 F.Supp.2d 484, 492 (S.D.Tex.2011); *see also McGuinness v. State Farm Fire & Cas. Co.*, No. 01-98-00071-CV, 1998 WL 767728, at *3 (Tex. App. - Houston [1st Dist.] Nov. 5, 1998, pet. denied) (mem. op.).

14. Here, Defendant accepted, and paid Plaintiffs' claim on March 9, 2021. Defendant communicated to Plaintiffs "that our evaluation is complete, and we've calculated the amount of coverage available under your policy." *See* Exhibit A-2 Defendant's March 9, 2021 Letter. Defendant's letter to Plaintiffs triggered Plaintiffs' two-year limitation period within the Policy. Plaintiffs had until March 9, 2023 to bring suit, having in their possession facts which stated Defendant's claim position. Plaintiff's March 27, 2023 suit filing was after the limitation period expired. Simply stated, this Court should grant Defendant's Motion for Summary Judgment because a suit filed March 27, 2023 was beyond the March 9, 2023 limitation for Plaintiffs to bring a suit against Defendant.

### B. CONTINUED INVESTIGATION OF THE CLAIM DOES NOT RESTART LIMITATIONS

15. Merely requesting that an insurance company reinvestigate a previously denied claim or closed file "does not in and of itself reset the limitations clock." *De Jongh*, 664 F.App'x at 409 (citation omitted). Nor does an insurer's "willingness to review additional information." *Grayson v. Lexington Ins. Co*., G-15-120, 2016 WL 4733447, at *2 (S.D. Tex. Sept. 12, 2016) (first citing

*Pace*, 162 S.W.3d at 635; then citing *Sheppard v. Travelers Lloyds of Tex. Ins. Co*., No. 14-08-00248-CV, 2009 WL 3294997, at *5-7 (Tex.App.-Houston [14th Dist.] Oct. 15, 2009)).

16. Reinvestigation itself is insufficient to show a prior decision's withdrawal or change. *Sheppard*, 2009 WL 3294997, at *5-7; *Watson*, 224 F.App'x at 340 (5th Cir. 2007); *Pace v. Travelers Lloyds of Tex. Ins. Co*., 162 S.W.3d 632, 635 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Finally, the insurer's post-denial willingness to re-investigate the claim, and actual re-investigation, does not operate to nullify the prior accrual date for limitations on the insured's claims, where the insurer never signals any retreat from its decision. *Smith v. Travelers Casualty Insurance Company of America*, 932 F.3d 302, 314-16 (5th Cir. 2019) (applying Texas law).

17. Texas state and federal courts uniformly hold that when a claim for damage from a single event is denied or closed, but is later reinvestigated by the carrier and still denied, no tolling or resetting of the statute of limitations occurs. *Castillo v. State Farm Lloyds*, 210 F.App'x 390, 394 (5th Cir. 2006); *Pace*, 162 S.W.3d at 634-35; *Knox Mediterranean Foods*, 2022 WL 2980705, at *4-5; *Smith v. Travelers Cas. Ins. Co. of Am*., No. H-16-1527, 2018 WL 3369683, at *5 (S.D. Tex. July 10, 2018), aff'd, 932 F.3d 302 (5th Cir. 2019); *Sheppard v. Travelers Lloyds of Tex. Ins. Co*., 2009 WL 3294997, at *6-7 (Tex.App.-Houston [14th Dist.] Oct. 15, 2007, pet. denied); *Rodriguez v. State Farm Lloyds*, No. 5:17-CV-161, 2018 WL 3966270, at *3 (S.D. Tex. Aug. 17, 2018); *Ocotillo Real Estate Investments ILLC v. Lexington Ins. Co*., No. 3:14-CV-3259-N, 2015 WL 11120866, at *2-3 (N.D. Tex. Jan. 9, 2015); *De La Rosa v. Allstate Fire and Cas. Ins. Co.*, No. A-21-CV-59-LY, 2022 WL 1793527, at *3 (W.D. Tex. Feb. 28, 2022), report and recommendation adopted, No. 1:21-CV-059-LY, 2022 WL 1797348 (W.D. Tex.Feb. 28, 2022)[3]; *Singh v.*

[3] For example, in *De La Rosa v. Allstate Fire and Casualty Insurance Company*, the court granted summary judgment in favor of Allstate because Allstate never changed or took action inconsistent with its decision it made on January 15,

*RiverSourceLife Ins. Co.*, No. A-19-CV-541-LY, 2021 WL 5194116, at *4 (W.D. Tex. Sept. 3, 2021), report and recommendation adopted, No. 1:19-CV-541-LY, 2021 WL 5195221 (W.D. Tex. Sept. 28, 2021); *Bustos v. State Farm Lloyds*, No. 4:19-cv-04812, 2020 WL 5745823, at *3-4 (S.D. Tex. July 13, 2020).

18. For example, in *Grayson v. Lexington Insurance Company*, the court granted summary judgment in favor of Lexington because Lexington's action to reassess its financial liability and pay additional money was not considered to be a change or action inconsistent with Lexington's original decision. G-15-120, 2016 WL 4733447, at *2 (S.D. Tex. Sept. 12, 2016). Grayson filed a claim with Lexington for fire damage that was a result of a lightning strike. *Id*. at *1. Lexington on June 4, 2010 sent a letter to Grayson explaining it had made its "final determination" of the claim and issued payment in the amount of $160,700 and withheld depreciation in the amount of $32,300. *Id*. On October 25, 2010, Lexington re-examined Grayson's claims and authorized additional payments to cover increased costs of repairs. *Id*. Lexington issued the additional payment on November 8, 2010. *Id*. Subsequently, Grayson had the house demolished and rebuilt. *Id*. The home was completed in April of 2013, to which Grayson requested the release of the

---

2018. No. A-21-CV-59-LY, 2022 WL 1793527 at *3. De la Rosa filed a claim with Allstate claiming his roof had been damaged by a hailstorm. *Id*. at *1. Allstate inspected the property and recognized there was damage to De La Rosa's roof, but it was under the policy's deductible. *Id*. After Allstate sent the initial letter on January 15, 2018 with its coverage determination, Allstate sent a second letter informing De La Rosa if he wished to submit additional information, he could submit a proof of loss. *Id*. De La Rosa then obtained an independent adjuster who communicated with Allstate claiming additional damage was found on the roof which was not included in Allstate's original estimate. *Id*. On July 19, 2019, while Allstate was communicating with the independent adjuster, Allstate mailed a letter to De La Rosa stating it was suspending his claim until it received additional information from the independent adjuster. *Id*. De La Rosa relying heavily on *Pace* argued that "if an insurer expressly or impliedly withdraws or changes its decision by, for example, making additional payment or taking action inconsistent with that decision' the date of the subsequent decision is controlling." *Id*. The court disagreed and held the January 15, 2018, was the accrual date not July 19, 2019 when Allstate sent the additional letter suspending De La Rosa's claim. *Id*. at *3. The court's reasoning was based on the fact Allstate never acted inconsistent with its initial coverage decision. *Id*.

holdback amount and payment of the policy limits. *Id*. Lexington released the depreciation holdback but did not issue payment for policy limits. *Id*.

19. Ultimately, Grayson filed suit on April 23, 2015, which Lexington removed to federal court and immediately moved for summary judgment on the basis limitations had expired. The court agreed and held the June 4, 2010 letter which conveyed Lexington's final determination, was the accrual date not when Lexington's additional payment was made. *Id*. at *2. Grayson argued that it was unclear that Lexington had made its final determination to deny her claim until it paid only the holdback amount and not the remained of the policy limits. *Id*. The court disagreed because "under the appliable law that belief is clearly unreasonable given the facts of this case." *Id*.

20. These authorities show Liberty's subsequent inspections and issuance of additional letters and supplementing payment of the claim did not restart limitations. Liberty never changed its position that freeze damage occurred at Plaintiffs' home. Liberty continued to accept new information from Plaintiffs and issued payment as it saw fit. Since Liberty never changed its position on Plaintiffs' claim, i.e., acceptance and payment of the claim on March 9, 2021, limitations began running on March 9, 2021 on Plaintiffs' breach of contract, Insurance Code Chapter 541, DTPA and common law bad faith claims. As Plaintiffs filed suit more than two years after this date, this makes their breach of contract, Insurance Code Chapter 541, DTPA, and common law bad faith claims untimely.

### C. TO THE EXTENT THIS COURT FINDS PLAINTIFFS' FILED SUIT DURING THE APPLICABLE LIMITATIONS PERIOD, PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS SHOULD BE DISMISSED BECAUSE THERE IS A *BONA FIDE* DISPUTE TO COVERAGE AND PLAINTIFFS HAVE NO EVIDENCE OF AN INDEPENDENT INJURY.

21. Plaintiffs' causes of action for violations of the Texas Insurance Code §541, breach of the duty of good faith and fair dealing and DTPA should be dismissed because Plaintiff has no-

evidence that Defendant: (1) misrepresented material facts relating to coverage; (2) failed to attempt in good faith make a prompt fair and equitable settlement of the claim; (3) failed to provide a prompt and reasonable explanation of the basis in the policy for underpayment of the claim; (4) failed to conduct a reasonable investigation; (5) committed any of the acts Plaintiffs complain of knowingly; and (6) Plaintiffs' have not suffered an independent injury.

### 1. PLAINTIFFS' HAVE NO EVIDENCE THEY SUFFERED AN INDEPENDENT INJURY.

22. Under Texas law, "although a breach of contract finding is not a prerequisite to recovery for a statutory violation that 'caused' the insured's damages, the 'general rule' is that 'an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy.'" *Ortiz*, 589 S.W.3d at 134 (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018)). For this independent injury rule to apply, the insured's damages must by "truly independent of the insured's right to receive policy benefits" and cannot "'flow' or 'stem' from the denial of the claim for policy benefits." *Id*. at 499-500. The Supreme Court of Texas has stressed that independent injuries are rare. *Id*. at 500 ("Our reference ... to 'the possibility' that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and we in fact have yet to encounter one."). Plaintiffs have not pled or produced any evidence Plaintiffs suffered an independent injury.

### 2. PLAINTIFFS' COMMON-LAW DUTY OF GOOD FAITH CLAIMS FAIL BECAUSE DEFENDANT DID NOT DENY PLAINTIFFS' CLAIM.

23. Under Texas Law, an insurer has a common-law duty of good faith and fair dealing. *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co*., 725 S.W.2d 165, 167 (Tex. 1987). Claims alleging violations of this duty are analyzed under the reasonable-basis test. *Higginbotham v. State Farm Mut. Auto. Ins.*

*Co.*, 103 F.3d 456, 459 (5th Cir. 1997). Under this test, a breach of the duty of good faith and fair dealing by the insurer can only be found if there was "no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Id.* (emphasis in original). Thus, the insured must establish not just the absence of a reasonable basis for denying or delaying payment of the claim, but that the insurer knew or should have known of that absence. *Id.* This requires the insured to show "that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous," the insurer is not liable for breach of the duty of good faith and fair dealing. *Id.* "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

24. Defendant never denied coverage at all and it paid Plaintiffs' claim. As a result, the only remaining disagreement is whether the amount Defendant paid was sufficient. Defendant paid Plaintiffs, $159,112.99 for damages to Plaintiff's dwelling, $27,651.17 for damages to personal property and $87,261 for Additional Living Expenses. *See* **Exhibit A-3**. In sum, Defendant paid $274,025.16 to Plaintiffs' benefit under their Policy. The only dispute remaining is over the amount Defendant paid on the claim which is merely a "bona fide dispute to coverage." *Simmons*, 963 S.W.2d at 44. Defendants determination was reasonably based on its investigation, reports, and estimates. Even though Defendants' determination could still turn out incorrect at trial, the questions at this stage is whether Defendant's determination was reasonable, and the evidence shows it was. Accordingly, the Court should grant summary judgment on Plaintiffs' Common-Law Duty of Good Faith Cause of Action.

### 3. PLAINTIFF'S CHAPTER 541 CAUSES OF ACTION SHOULD FAIL BECAUSE THEY REST ON THE SAME PREDICATE AS THE COMMON-LAW DUTY AND DEFENDANT DID NOT DENY PLAINTIFFS' CLAIM.

25. Plaintiffs' also raises claims under Chapter 541 of the Texas Insurance Code. Some Chapter 541 claims "require the same predicate for recovery" as common-law duty-of-good-faith claims: a showing of bad faith. *Higginbotham*, 103 F.3d at 460. For these Chapter 541 claims, the same "reasonable-basis test" used to evaluate common-law good-faith claims applies. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co*., 801 F.3d 512, 525–26 (5th Cir. 2015).

26. Plaintiffs raise claims under Sections 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4), and (a)(7) of the Texas Insurance Code. (Dkt. No. 1 at pg. 14 ¶¶ 39-40). As discussed above, Plaintiffs' theory of liability for their claim that Defendant breached the common-law duty of good faith and fair dealing is that Defendant unreasonably delayed payment and unreasonably denied part of the claim. Accordingly, for the same reasons this Court should grant summary judgment in favor of Defendant on the breach of the common-law duty-of-good-faith-and-fair-dealing claims, the Court should grant summary judgment on the Plaintiffs' claims under Sections 541.060(a)(1), (a)(2)(A), and (a)(7).

27. This leaves only the claims under Sections 541.060(a)(3). Unlike the other Chapter 541 claims, the Plaintiffs' theory of liability for its claim under Sections 541.060(a)(3) is not based on bad faith. Under Section 541.060(a)(3), it is an unfair settlement practice if an insurer "fail[s] to promptly provide to a policyholder a reasonable explanation of the basis in the policy ... for the insurer's denial of a claim[.]" TEX. INS. CODE § 541.060(a)(3). Defendant here never denied Plaintiffs' claim and provided an explanation for its acceptance of the claim on March 9, 2021. *See* **Exhibit A-2**. Therefore, Plaintiffs' claims under Texas Insurance Code Chapter 541 should be dismissed.

### 4. PLAINTIFFS' DTPA CLAIMS FAIL BECAUSE THEY ARE PREMISED UPON THE SAME THEORY AS PLAINTIFF'S COMMON-LAW DUTY OF GOOD FAITH AND FAIR DEALING CLAIMS

28. To be sure, as with a bad faith claim, a reasonable basis for denying an insurance claim may also be a defense to claims under the DTPA and Texas Insurance Code. *Greenville Townhome Owners Ass'n, Inc. v. Phila. Indem. Ins. Co.*, 473 F. Supp. 3d 692, 699 (N.D. Tex. 2020).[4] As evidenced above, Defendant has shown it did not deny Plaintiffs' claim. The only dispute is the amount Defendant paid Plaintiffs. Accordingly, this Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' DTPA and Extracontractual claims.

## CONCLUSION

Plaintiffs unequivocally allowed the limitation period to expire prior to filing their petition. The "Suit Against Us" provision in the Policy required Plaintiffs to bring the lawsuit before the expiration of the "two years from the date we accept or reject the claim" period. Plaintiffs failed to do so. Defendant's prospective liability, if any, is precluded by the very contract on which Plaintiffs base their claims… because of Plaintiff's failure to comply with the Policy's terms. This failure is legally dispositive, entitling Defendant to summary disposition for which it prays herein.

Alternatively, if this Court determines Plaintiffs filed suit during the applicable limitations period, this Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' bad faith

---

[4] (citing *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)). "The insurer, 'will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage.'" *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015) (quoting *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 429 (5th Cir. 2007)). However, "the extracontractual claim must share 'the same predicate for recovery as bad faith causes of action in Texas.'" *Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1000 (N.D. Tex. 2018) (quoting *Higginbotham*, 103 F.3d at 460). Put differently, the "claim must be 'based on the same theory which underlies the bad faith claim.'" *Greenville*, 473 F. Supp. 3d at 699 (quoting *State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1180 (E.D. Tex. 1996), *aff'd*, 129 F.3d 607 (5th Cir. 1997)). ¶

and extra-contractual claims because Defendant has demonstrated there is a *bona fide* dispute to coverage.

Wherefore, Defendant Liberty Insurance Corporation prays that: on hearing of this Motion, this Court grant its Motion for Summary Judgment as a matter of law, and Order that Plaintiff recover nothing of this suit, that Plaintiff takes nothing on all of their claim. Defendant finally prays that it be granted such other and further relief to which Defendant show itself justly entitled to, both in law and at equity.

Respectfully submitted,


**THOMPSON, COE, COUSINS & IRONS, L.L.P.**

By: */s/ J. Mark Kressenberg*
**J. Mark Kressenberg**
State Bar No. 11725900
Email: Mkressenberg@thompsoncoe.com
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
Facsimile: (713) 403-8299

**Kolby J. Keller**
State Bar No.:24119382
kkeller@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

**ATTORNEYS FOR DEFENDANT LIBERTY INSURANCE CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2024, a true and correct copy of the foregoing has been served on Plaintiff's counsel in accordance with the Texas Rules of Civil Procedure:

*/s/ J. Mark Kressenberg*

**J. Mark Kressenberg**